IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

| | |
|---|---|
| **RONALD WARDEN, JR.,** ) | |
|     **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 1:12-03071** |
| ) | |
| **CAROLYN. W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
|     **Defendant.** ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

    This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Standing Order entered May 17, 2012 (Document No. 3.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 7 and 10.)

    The Plaintiff, Ronald Warden, Jr. (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on May 1, 2009 (protective filing date), alleging disability as of May 21, 2007, due to "right hand injury; back problems; limited education, nerves, stomach problems, depression, [and] panic attacks." (Tr. at 14, 69-76, 116, 118, 339-48.)  The claims were denied initially and upon reconsideration. (Tr. at 48, 49, 50-52, 59-61, 349, 350-52, 356, 357-59.) On March 4, 2010, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 62.) A hearing was held on April 6, 2011, before the Honorable Steven A. DeMonbreum. (Tr. at 360-97.)  By decision dated April 26, 2011, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 14-30.) The ALJ's decision became the final decision of the Commissioner on May 17, 2012, when the Appeals Council denied

Claimant's request for review. (Tr. at 5-8.) Claimant filed the present action seeking judicial review of the administrative decision on July 12, 2012, pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2011). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2010). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir.

1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(C) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of

daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph © of this

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because although he had engaged in substantial gainful activity since the alleged onset date, there was "a continuous 12-month period, however, during which [he] did not engage in substantial gainful activity." (Tr. at 17, Finding Nos. 2 and 3.) Under the second inquiry, the ALJ found that Claimant suffered from "right hand injury; lumbar strain/herniated nucleus pulposus; depression; panic disorder; and borderline intellectual functioning," which were severe impairments. (Tr. at 17, Finding No. 4.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 17, Finding No. 5.) The ALJ then found that Claimant had a residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: "The [C]laimant should avoid concentrated exposure to extremely cold temperatures and vibration; can never use heavy hand tools; and is limited to simple, unskilled work." (Tr. at 18, Finding No. 6.) At step four, the ALJ found that Claimant was unable to return to his past relevant work. (Tr. at 28, Finding No. 7.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as an assembler, a packer, and an inspector, tester, and sorter, all unskilled jobs. (Tr. at 29, Finding No. 11.) On this basis, benefits were denied. (Tr. at 29, Finding No. 12.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on November 6, 1970, and was 40 years old at the time of the administrative hearing on April 6, 2011. (Tr. at 28, 69, 339.) The ALJ found that Claimant had a seventh grade, or marginal education and was able to communicate in English. (Tr. at 28, 118, 122.) In the past, he worked as a construction worker, car wash attendant, and truck driver. (Tr. at 28, 129-36, 393.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence and will discuss it below in relation to Claimant's arguments.

***Sunny S. Bell, M.A. - Consultative Examination***:

On July 15, 2009, Claimant underwent a consultative examination by Sunny Bell, M.A. (Tr. at 150-57.) Claimant arrived an hour late to the examination, having driven an hour with his wife. (Tr. at 150.) He reported that he had a commercial driver's license and that he sometimes was panicked and scared in unfamiliar places. (Id.) Ms. Bell observed that his hands trembled and that he initially was hesitant but that he easily established rapport over time and willingly accepted tasks presented. (Id.) Claimant reported stomach pain and nausea, a limited education, bad nerves, and depression among his chief complaints. (Tr. at 151.) He reported crying episodes, decreased energy, sleep difficulties,

irritability, decreased libido, low self-esteem, difficulty with concentration, difficulty making decisions, of being withdrawn and apathetic, and feelings of being hopeless, helpless, worthless, and useless. (Id.) He admitted to suicidal thoughts and a past attempt by cutting his wrists, but denied current suicidal thoughts or plans. (Id.) He also admitted to vague homicidal thoughts, but denied that he would act upon them. (Id.) Claimant reported panic attacks characterized by a racing heart, trembling, shaking, difficulty breathing, and a feeling as if something was going to happen. (Id.) He stated that the attacks would occur anywhere and that they especially were bad when he drove a truck at work. (Id.) He further reported initial sleep disturbance and mid-evening awakenings, a poor appetite, and a 35-pound weight loss. (Id.)

Claimant reported past psychiatric treatment at Southern Highlands for panic attacks that was paid for by his employer. (Tr. at 152.) He also reported that he was treated at the emergency room for a panic attack. (Id.) He indicated that he quit school in the seventh grade and attended special education classes when in school and received below average grades. (Id.) On mental status exam, Ms. Bell observed that Claimant had adequate personal hygiene but was unshaven and had poor dental hygiene. (Tr. at 153.) He was cooperative and motivated, interacted in a socially hesitant manner, did not generate conversation spontaneously but exhibited a sense of humor, had hesitant eye contact, and maintained interactions of an introverted individual. (Id.) His speech was clear, goal-directed, and relevant; he was oriented to month, date, and year but not to the day of the week; he was oriented to person, place, and circumstance; his mood was depressed and he became tearful; his affect was restricted; his thought processes were logical and organized; he reported no delusions obsessions, or phobias; his judgment was mildly deficient; he admitted to past suicidal thoughts and one attempted suicide, but denied current suicidal thoughts or plans; he admitted to vague homicidal thoughts but denied that he would act upon them; his immediate and recent memory skills were within normal limits; his remote memory skills were mildly deficient; his concentration was within normal limits; and his hands were noted to tremble. (Tr. at 153-54.)

Results of the WAIS-III indicated a Verbal IQ score of 75, a Performance IQ of 72, and a Full

Scale IQ of 71. (Tr. at 154.) The WRAT-3 indicated that Claimant performed reading and spelling skills at the fourth grade level and arithmetic skills at the fifth grade level. (Id.) Ms. Bell opined that the results were an accurate estimate of Claimant's level of functioning and were commensurate with his educational and vocational history. (Id.) She diagnosed depressive disorder NOS, panic disorder without agoraphobia, and low borderline intellectual functioning. (Tr. at 155.) She noted his daily activities to have included piddling around in a storage building, occasionally visiting friends, maintaining his personal hygiene, helping with the housework, caring for the yard with a push mower and weedeater, driving, running errands, sitting outside, reading the Bible, hunting and fishing, watching television, and managing his finances with the exception of a checkbook. (Id.) Ms. Bell opined that Claimant's social functioning was mildly deficient and noted that he visited with family and friends and attended his step-children's school functions, but preferred to stay by himself. (Id.) She further opined that Claimant's pace and persistence were within normal limits, that his prognosis was poor, and that he was capable of managing his own benefits. (Tr. at 156.)

*Dr. Rosemary L. Smith, Psy.D. - Mental RFC Assessment & Psychiatric Review Technique*:

On August 18, 2009, Dr. Smith completed a form Mental RFC Assessment on which she opined that Claimant's borderline intellectual functioning, depressive disorder, and panic disorder, resulted in moderate limitations in his ability to understand, remember, and carry out detailed instructions. (Tr. at 158-61.) She opined that Claimant was not limited significantly in all other categories of mental functioning. (Id.) She opined that Claimant retained "the ability to learn and perform simple, unskilled work-like activities." (Tr. at 160.)

Dr. Smith also completed a form Psychiatric Review Technique on which she opined that Claimant's mental impairments resulted in mild limitations in his ability to maintain activities of daily living, social functioning, concentration, persistence, and pace, and resulted in no episodes of decompensation each of extended duration. (Tr. at 162-75.) In forming her opinions, Dr. Smith reviewed the consultative examination by Ms. Bell and forms completed by Claimant. (Tr. at 174.) Dr. Smith noted

that although Claimant alleged problems with concentration, Ms. Bell found no such difficulties and his activities failed to suggest any difficulties. (Id.) Dr. Smith opined therefore, that he was not credible in this regard and that there was an absence of significant limitations in the area of concentration. (Id.) On February 12, 2010, Dr. Timothy Saar, Ph.D., reviewed Dr. Smith's opinions and affirmed them as written. (Tr. at 213.)

*Gary Craft, M.D. - Consultative Examination*:

Dr. Craft conducted a physical examination of Claimant on August 24, 2009, at which Claimant reported an untreated anxiety and depressive disorder associated with panic attacks. (Tr. at 177.) Dr. Craft noted on physical exam that Claimant was alert and cooperative. (Id.) He noted that Claimant was very well oriented, related well to other people, and that his gross mental status was intact. (Tr. at 178.) Dr. Craft noted that he could not detect any deterioration in his personal habits and that he had a normal affect, memory, thought content, and general fund of knowledge. (Id.) He opined that the long-term prognosis for Claimant's mental condition was "fair and could be helped with treatment." (Id.)

*Progress Notes - Southern Highlands*:

Claimant treated at Southern Highlands from December 20, 2006, through December 2, 2010. (Tr. at 275-93.) Claimant first treated at Southern Highlands on December 20, 2006, for depressed mood and substance abuse. (Tr. at 277.) He was discharged on August 3, 2007, however, for failure to keep his appointments after his initial intake in December. (Id.) Claimant returned to Southern Highlands on April 14, 2010, with complaints of panic attacks, depression, and anxiety. (Tr. at 279.) He reported that he was grouchy, verbally aggressive, easily irritable, sad and tearful at times, could not drive because he was too anxious, worried about everything, had a diminished appetite and poor sleep, had low energy and tired easily, had nausea and vomiting most every day, shook all the time, had trust issues, and experienced panic attacks three to four times per week. (Id.) In the past he took Wellbutrin with good results but stopped taking the medication without explanation. (Id.) It was noted that Claimant was cooperative and answered questions clearly and sequentially. (Tr. at 280.) His memory was spotty at

9

times, he was alert and oriented in all spheres, and his mood and affect were depressed. (Id.)

Claimant returned to Southern Highlands on April 21, 2010, for a follow-up psychological evaluation with Ted Webb, PA-C. (Tr. at 282-85.) Claimant reported panic attacks, depression, anxiety, inability to sleep, and admitted to smoking marijuana while taking prescription drugs and taking his wife's medications to sleep occasionally. (Tr. at 282.) On mental status exam, P.A. Webb observed that Claimant's psychomotor activity was normal, as was his speech, cognition, memory, attention, insight, and judgment. (Tr. at 284.) His mood was depressed, his affect was flat, thought content was rational, there was an absence of hallucinations or delusions, he denied suicidal or homicidal ideations, he was withdrawn socially, his support system was limited, his intelligence was average, and he was oriented to person, place, and time. (Id.) P.A. Webb diagnosed major depressive disorder, recurrent, moderate; generalized anxiety disorder; panic disorder; borderline intellectual functioning; and assessed a GAF of 45.[2] (Id.) He opined that Claimant's prognosis was guarded and prescribed Lexapro, Klonopin .5mg, and Ambien 10mg. (Tr. at 284-85.)

Claimant reported that he was doing all right on May 21, 2010. (Tr. at 287.) P.A. Webb noted that Claimant interacted well, maintained direct eye contact, had a depressed mood and an anxious affect, had appropriate speech and adequate sleep, had baseline appetite and energy, denied suicidal or homicidal ideation, had normal stream of thought and appropriate content of thought, had good judgment, was oriented fully, had baseline cognitive functioning, and had good recent and remote memory. (Id.) P.A. Webb decreased Claimant's Klonopin and prescribed Celexa. (Id.) On July 12, 2010, Claimant presented with a depressed mood and an anxious affect, but the remainder of his exam remained constant from May 21. (Tr. at 290.) P.A. Webb assessed an improved GAF of 50. (Id.) On

---

[2] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 41-50 indicates that the person has "serious symptoms . . . or any serious impairment in social, occupational, or school functioning." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") 32 (4th ed. 1994).

December 2, 2010, Claimant again was discharged for failure to keep appointments and it was noted that his last appointment was on September 3, 2010. (Tr. at 292-93.)

*Princeton Community Hospital*:

On November 17, 2010, Claimant presented to the emergency department complaining of right wrist pain status post injury from May 2007. (Tr. at 243.) He reported that he worried and became so anxious about the wrist that he began vomiting. (Id.) He was discharged with no further complaints. (Tr. at 241.)

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in failing to make specific findings regarding his panic disorder. (Document No. 7 at 2-5.) Claimant asserts that he suffered panic attacks two times per week that incapacitated him for three to four hours during the day. (Id. at 2.) Based on these facts, Claimant asserts that the VE testified that he was disabled. (Id.) The ALJ, however, failed to make any factual findings regarding his panic disorder, beyond finding that it was a severe impairment. (Id. at 3.) Claimant notes that both Mr. Webb and Ms. Bell diagnosed him with suffering from a panic disorder and prescribed Klonopin, among other medications. (Id.) Claimant contends that the ALJ erred in failing to discuss these factual matters. (Id. at 5.)

In response, the Commissioner asserts that the ALJ properly determined Claimant's RFC. (Document No. 10 at 8-11.) Though Claimant asserts that he suffered panic attacks two times per week that incapacitated him for three to four hours during the day, the Commissioner asserts that the evidence of record failed to substantiate Claimant's allegation. (Id. at 8.) The Commissioner notes that mental status examinations failed to reveal significant findings; IQ scores revealed that he was functioning at the borderline level of intellectual functioning; Dr. Smith opined that he was only moderately limited in his ability to understand, remember, and carry out detailed instructions; the medical records failed to

11

document episodes of panic attacks though the medical providers gave him the benefit of the doubt with the diagnosis; none of the medical providers or physicians opined that he was unable to work; and although he was prescribed Klonopin in April 2010, Mr. Webb decreased the dosage only one month later because he was doing well. (Id. at 9.) The Commissioner therefore contends that Claimant failed to meet his burden of demonstrating that his RFC was more restrictive than that established by the ALJ. (Id.)

The Commissioner further asserts that the ALJ reasonably accepted the VE's testimony in response to a hypothetical question that included all of Claimant's credibly established limitations and that Claimant's argument to the contrary is without merit. (Document No. 10 at 10-11.) The Commissioner asserts that although the ALJ posed a hypothetical to the VE that included Claimant's alleged panic attacks, the ALJ reasonably declined to rely upon the VE's response because the evidence failed to establish that Claimant would be absent from work at least once per month. (Id. at 11.) As such, Claimant's argument is without merit and the ALJ's decision is supported by substantial evidence. (Id.)

Analysis.

1. RFC Analysis.

Claimant first alleges that the ALJ erred in failing to make specific findings regarding his panic disorder. (Document No. 7 at 2-5.) "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2011). "This assessment of your remaining capacity for work is not a decision on whether

you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

    The ALJ determined that Claimant's panic disorder was a severe impairment (Tr. at 17.) and limited him to performing simple, unskilled work. (Tr. at 18.) The ALJ further determined that Claimant's mental impairments, including depression, panic disorder, and borderline intellectual functioning, resulted in mild limitations in maintaining activities of daily living and social functioning; moderate limitations in maintaining concentration, persistence, and pace; and no episodes of decompensation each of extended duration. (Tr. at 18.) In assessing Claimant's RFC, the ALJ reviewed and summarized the evidence of record from his mental health providers, in addition to the medical records from emergency care and the medical opinions of record. (Tr. at 23-28.) He acknowledged Claimant's reports of panic attacks and description of the attacks including heart racing, trembling and shaking, breathing difficulties, and feelings of impending doom. (Tr. at 23.) The ALJ acknowledged that Ms. Bell and Mr. Webb diagnosed panic disorder. (Tr. at 23-24.) He noted that Mr. Webb prescribed Klonopin for the panic disorder on April 21, 2010, and decreased it on May 21, 2010, as Claimant was doing all right. (Id. at 24.) The ALJ noted that Claimant continued to do well on July 12, 2010, and had a normal mental status examination. (Tr. at 25.) Claimant presented to the emergency room on one occasion with symptoms of anxiety over his injured wrist. (Id.) The ALJ further noted that Claimant was twice discharged from treatment at Southern Highlands for failing to keep appointments and for not following treatment recommendations. (Tr. at 23, 25.)

    The ALJ concluded that Claimant's treatment history did not support fully his allegations of the severity of functional limitations and that his allegations, as a whole, were partially credible. (Tr. at 25.)

He noted that Claimant received limited psychiatric treatment and counseling for his mental impairments. (Id.) Despite Mr. Webb's assessed GAF scores that suggested serious symptoms, the ALJ noted that Mr. Webb failed to offer any examples of such serious symptoms and noted that Claimant received only conservative treatment. (Tr. at 25-26.) Although the ALJ did not make any specific findings as to Claimant's panic disorder as he alleges, the ALJ found as a whole, that Claimant's allegations were not supported by the record. As the Commissioner points out, his treating provider, Mr. Webb reduced the medication prescribed to control the panic attacks after only one month because Claimant stated that he was doing all right. Furthermore, none of the medical sources found that Claimant was disabled based on the panic disorder. The ALJ gave considerable weight to the state agency consultants' opinions who found that Claimant retained the ability to perform at least simple, unskilled work activities. (Tr. at 27.) The ALJ found that their opinions were consistent with the treatment history and the clinical findings in the record. (Id.)

Accordingly, it is apparent from the record and the ALJ's decision that Claimant's mental condition, including his panic disorder, had improved somewhat over the course of time, and that as a whole, Claimant's symptoms and allegations were out of proportion with the medical evidence of record. The undersigned therefore finds that the ALJ's RFC assessment and decision that Claimant's mental impairments, including his panic disorder, limited him to performing simple, unskilled work is supported by the substantial evidence of record.

2. Hypothetical Question.

Claimant also alleges that the ALJ erred in failing to rely on the VE's response to a hypothetical question regarding his panic attacks. (Document No. 7 at 5.) To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance

if he is not familiar with the particular claimant's impairments and abilities – presumably, he must study the evidence of record to reach the necessary level of familiarity." Id. at 51. Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. See Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983).

The ALJ posed two hypothetical questions to the VE. (Tr. at 394-95.) The first hypothetical question encompassed primarily physical limitations, as well as a limitation to simple, easy to learn, unskilled work. (Tr. at 394.) The VE responded that several light, unskilled jobs were available, including assemblers, packers, inspectors, sorters, and testers. (Id.) The VE also testified that for light, unskilled work, an individual may miss one day per month. (Id.) The second hypothetical question required the VE to consider whether work was available for a claimant who was incapacitated by panic attacks once a week for three to four hour per day. (Tr. at 395.) The VE responded that such a limitation would preclude all employment. (Id.) As discussed above, the ALJ determined that the severity of Claimant's symptoms as a whole were not supported by the record. The record demonstrated that his panic attacks improved and that his medication was decreased. Claimant reported to Mr. Webb that he was doing all right. The medical notes by his medical providers do not support the severity of his allegations. Consequently, the ALJ determined that Claimant's allegations were not credible entirely. As such, the ALJ determined that the second hypothetical question was unsupported by the evidence of record and the ALJ therefore, was not required to adopt the VE's response. Accordingly, the undersigned finds that the ALJ's decision is supported by the substantial evidence of record.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the

Plaintiff's Motion for Judgment on the Pleadings (Document No. 7.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 10.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, Senior United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Senior Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: December 9, 2013.

_____
R. Clarke VanDervort
United States Magistrate Judge